No. 34,181

THE CATERPILLAR TRACTOR COMPANY, *Appellee*, v. MILES E. SICK-LER, I. L. SICKLER, LUTHER J. SICKLER, *Appellees* (R. B. CHRISTY, Intervenor, *Appellant*).

(87 P. 2d 503)

Opinion filed March 4, 1939.

R. D. Armstrong, D. B. Lang, both of Scott City, C. E. Vance, C. R. Hope and A. M. Fleming, all of Garden City, for the appellant.

Ray H. Calihan, of Garden City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for money. Judgment was for plaintiff. Garnishment proceedings were instituted to collect this

judgment. The court made an order directing how funds in the hands of the garnishee should be divided. An interpleader who claimed a lien on that fund appeals.

The plaintiff filed an action against the Sicklers and recovered a judgment for $941.37. A garnishment summons was served on the Geo. E. Gano Grain Corporation. This company answered that it had in its hands funds due the Sicklers for grain sold and also had in its possession some grain. The company also stated that R. B. Christy claimed an interest in the funds and in the grain.

In response to an order of the court Christy filed an answer setting up his claim. In his answer he alleged that on August 27, 1932, he entered into a lease for certain real estate by the terms of which he leased this real estate to I. L. Sickler for a term of twelve months from March 1, 1933, to March 1, 1934; that under the terms of this lease Sickler was to pay him $200, evidenced by a note for that amount, and one-third of all crops produced on the place. A copy of this lease and a copy of the note were attached to the petition.

The answer alleged that Sickler continued to occupy the property from year to year from the first day of March, 1934, under the terms of the lease, until the time when this answer was filed in February, 1938; that in 1937 the Sicklers produced 1,083 bushels of wheat and delivered to the Geo. E. Gano Grain Corporation the landlord's share of this wheat, amounting to 361 bushels, and that the price for which this was sold was $1.15 a bushel, or $415.15, and that out of the money then in the hands of the grain company $415.15 belonged to Christy as the proceeds of his one-third interest in it as landlord. The answer also alleged that the Sicklers had failed to pay the $200 cash rent for the years ending March 1, 1934, 1935, 1936, 1937 and 1938, and had failed to account to Christy for one-third of the grain raised in 1937, and that of the $712 in the hands of the grain company $415.15 was due him as his share of the crop raised, and he had a prior lien on the balance of $296.85 for the cash rent due and unpaid. The answer further alleged that the elevator company had in its possession 298 bushels of wheat upon which Christy claimed a lien for the amount owing him as cash rent. The answer prayed that $415.15 be paid to Christy as his share of the rent; that the $296.85 remaining from the $712 be applied on the cash rent due him, and that the 298 bushels of wheat in possession of the elevator company be ordered sold and the proceeds applied on the cash rentals due him.

No further pleading appears in the record, but it is clear that the issue tried between the plaintiff and Christy was whether after the expiration of the original term of the lease the $200 cash rent was still agreed on by the parties. Christy insisted that he did not agree to any change and that the Sicklers owed him $200 for each year they had been on the farm. The Sicklers claimed that they and Christy agreed after the first year that no more cash rent should be paid. It was agreed that the case should be submitted to the trial court but that the trial court should submit questions to the jury in an advisory capacity. At the close of the evidence the following question was asked and answer made:

"Q. Do you find from a preponderance of the evidence that the parties to the original lease, namely, R. B. Christy, lessor, and I. L. Sickler, lessee, by mutual understanding and agreement, changed the lease contract to eliminate the requirement for the payment of the cash rental of $200 after the expiration of the term of the original lease? This question should be answered 'Yes' or 'No.' A. Yes."

The trial court approved this finding and found that the lease was modified by parol, as found by the jury; found that Christy was entitled to no cash rental after March 1, 1934, but there was due him the sum of $310 on his note; that this amount was a first lien on the funds in the hands of the garnishee; that Christy was entitled to $281.13 as the landlord's share of the wheat and that the balance of the money in the hands of the garnishee should be paid to the plaintiff to apply on its judgment. Christy appeals from this judgment. Had the trial court not held that the original lease was modified after the first year by taking out the provision for cash rental he would have been entitled to this $252.28 rather than the plaintiff. The Sicklers do not care who gets it. They had all the fun of raising the wheat. The only question argued on this appeal is the sufficiency of the evidence to sustain the findings of the trial court that the parties agreed to eliminate the provision for a payment of cash rental after the first year.

We have examined the record and have reached the conclusion that there was ample evidence to support this finding. A circumstance tending to support this finding is the fact that a note was demanded for the cash rent for the first year, but not for the subsequent years. One of the Sicklers testified that he told Christy in July, 1933, that he would not pay any more cash rent; that after that Christy never asked him for a note for the cash rent; that in

1935 he and his brother told Christy that one-third rent was too much and Christy told them to go on out and work the ground and they would settle it later. Another one of the Sicklers testified that about the middle of May, 1935, he and his brother told Christy that they could not pay any cash rent and he told them to go ahead and farm the place. The record shows that after these conversations the Sicklers went ahead and farmed the land in question for four or five years and no payment of cash rent was demanded, neither were the Sicklers asked to give a note for it.

Christy argues that the above testimony shows merely that he kept silent when the Sicklers told him that they could not pay any cash rent. He argues that mere silence when an offer is made does not constitute an acceptance of the offer. This general rule is correct, but there was more than mere silence. Christy let the Sicklers go ahead and work his land when they had told him they would not pay any more cash rent. At some of these times the land was blowing badly and it was important that the land be farmed. By his silence he caused them to expend time and money in putting in a crop. He accepted the benefits of this expenditure. Under such circumstances he brought himself within the rule laid down in 6 R. C. L. 600. There it is said: "Assent may be indicated by conduct or acquiescence."

The judgment of the trial court is affirmed.